DISTRICT OF OREGON: ss,                              AFFIDAVIT OF KENNETH BAIN

## Affidavit in Support of a Criminal Complaint

I, Kenneth Bain, being first duly sworn, hereby depose and state as follows:

## Introduction and Agent Background

1.      I am a Special Agent with the Drug Enforcement Administration (DEA) and have been since January 2022.  I am currently assigned to the DEA Seattle Field Division (SFD) Portland District Office (PDO).  As a Special Agent of the DEA, I have participated in numerous drug investigations as either the lead case agent or as a supporting investigative agent, including in Title III wiretap investigations of violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et seq.  I have received specialized training from the DEA, to include a 17-week Basic Agent Training course, followed by 16 weeks of DEA field training in Portland, Oregon and other training courses.  During my field training, I participated in multiple drug investigations involving controlled purchase operations, interdiction, vehicle tracking, cell phone geolocation techniques, pen register/trap and trace orders, and Title III wiretaps.  I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects involved in the smuggling and distribution of narcotics, conducted physical surveillance, utilized electronic and video surveillance, and authored federal Title III wiretaps.  I have been involved in conducting long-term, international, and complex conspiracy investigations.  Prior to my assignment to the PDO, I was a sworn law enforcement officer in the state of Florida with the University of Florida Police Department for six years.  During that time frame, I was assigned to Patrol for the first four years.  For the last two years, I was assigned to the Gainesville DEA office, under the Miami Field Division, as a deputized Task Force Officer ("TFO").

## Purpose of Affidavit

2.      This affidavit is submitted to support a criminal complaint and arrest warrant for **Frank ACOSTA-LOYA**, a Hispanic male, date of birth 12/xx/1995 ("**ACOSTA-LOYA**") and

**Affidavit of Special Agent Kenneth Bain**                                              **Page 1**

**Brianda A. CHAVEZ ("CHAVEZ")**, a Hispanic female, date of birth 9/xx/2004, for committing the crime of:

- Possession with Intent to Distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A).

3.      I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation.   I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

### Summary of Probable Cause

4.      On August 1, 2024, Oregon State Police ("OSP") Senior Trooper Scott Show and Oregon State Police Senior Trooper Bryan Smith conducted a traffic stop on **ACOSTA-LOYA**, who was operating a red 2013 Kia 4 door sedan bearing California license plate of 9KVN270 for a traffic violation (impeding the flow of traffic) on I-5 near milepost 265 northbound near Woodburn, Oregon. The vehicle was registered to both occupants.

5.      The Troopers greeted the occupants and immediately were able to smell the odor of marijuana emanating from the vehicle. The two occupants of the vehicle (**ACOSTA-LOYA,** identified by International Drivers License and subsequent criminal history check and **CHAVEZ,** identified by Colorado Drivers License) advised they were traveling from California, which led investigators to believe the marijuana had been illegally imported into Oregon. The occupants stated they were traveling to Portland to pick up **CHAVEZ**'s sister. The passenger's name,

**Affidavit of Special Agent Kenneth Bain**                                                    **Page 2**

**CHAVEZ**, was searched through Open Source and her phone number was located. Her phone number was confirmed during the traffic stop and the Troopers learned through a law enforcement database, she was connected to an active federal drug investigation in Colorado.

6.    When the Troopers requested a consent search, **CHAVEZ** denied consent. **ACOSTA-LOYA** was interviewed with the use of a translator and told the Troopers fentanyl powder may have been placed in the vehicle but it was not his. **ACOSTA-LOYA** was advised of his *Miranda* Rights and gave consent to a search. An Oregon State Police K9 was deployed on the vehicle and alerted to the presence of narcotic odor. A probable cause search was conducted of the vehicle and revealed approximately 2 kilogram bricks of suspected powder fentanyl, in a blue bag, in the rear compartment of the vehicle. Both occupants were taken into custody and the vehicle was secured on scene. **ACOSTA-LOYA** and **CHAVEZ** were transported to the Oregon State Police Salem Office (SMO) for questioning.  The seized bricks of fentanyl are depicted below:



///

**Affidavit of Special Agent Kenneth Bain**                                                    **Page 3**

7.      Investigators tested a sample of the suspected fentanyl powder received a positive (+) result for fentanyl, a Schedule-II controlled substance. With packaging, both kilogram bricks weighed approximately 2,298 gross grams.

8.      **ACOSTA-LOYA** and **CHAVEZ** both refused to speak with investigators at SMO. During a lull in the investigation, **ACOSTA-LOYA** escaped from SMO via the side door and led local and State law enforcement agencies on a two-hour man hunt, before being apprehended by Turner Police Department a short distance from SMO.  **ACOSTA-LOYA** and **CHAVEZ** were then transported, via DEA Agents, back to the Portland DEA Office for processing before being lodged at the Multnomah County Detention Center.

9.      Based on my training, knowledge, and experience, I know DTOs will often use multiple people to transport a large amount of narcotics and that they will not trust people with these large amounts of narcotics who are not involved in the criminal activity.  DTOs do not normally entrust one single person with a large amount of narcotics; rather, they will often request that two or more individuals transport the narcotics for the safety of themselves and their product. This lack of trust is due to the lucrative nature of drug trafficking and the risk that a load of drugs will be lost or stolen.  Additionally, using two or more people allows the couriers to swap out drivers when they are traveling long distances thus necessitating fewer stops and it also allows a second person to assist the driver in keeping a look out for law enforcement as well as rival groups that may seek to rob them of the drugs they are transporting.

10.      I know that fentanyl is a Schedule II controlled substance and an extremely powerful synthetic opioid that is approximately 100 times more potent than morphine and 50 times more potent than heroin.  I know that 2 mg. of fentanyl can be a potentially fatal dose.  I know a typical user of fentanyl, who uses it in powder form, will buy a quantity of powdered fentanyl that

**Affidavit of Special Agent Kenneth Bain**                                                    **Page 4**

they will then burn it on a piece of tin foil and inhale the fumes.  Sometimes a user will simply inhale the powdered fentanyl as is.  I also know that fentanyl addicts on the street do not regularly stockpile large amounts of fentanyl but rather tend to buy a small amount of what they need and then resupply themselves when they run out.  I know that a user of powdered fentanyl will use it in quantities of less than 1/10 of a gram.  I know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities of a gram or less.  I know that a person possessing more than five (5) grams of fentanyl powder does not possess the powder for personal use but rather such a quantity indicates that it is possessed for purposes of further distribution.  The seizure of two kilograms of fentanyl in a car on the freeway traveling from California into Oregon is indicative of drug couriers transporting fentanyl from a source area, California, to an area where it would be further distributed to other dealers.

### Conclusion

11.    Based on the foregoing, I have probable cause to believe, and I do believe, that **Frank ACOSTA-LOYA** and **Brianda A. CHAVEZ** have committed the crime of:

- Possession with Intent to Distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A).

I therefore request that the Court issue a criminal complaint and arrest warrants for **Frank ACOSTA-LOYA** and **Brianda A. CHAVEZ.**

12.    Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin.  AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient

**Affidavit of Special Agent Kenneth Bain**                                    **Page 5**

to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

<div style="margin-left: 50%;">

*By phone pursuant to Fed R. Crim. P. 4.1*
Special Agent Kenneth Bain
Drug Enforcement Administration

</div>

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ___9:37am___ on August__2__, 2024.

<div style="margin-left: 50%;">

_____
HONORABLE JOHN JELDERKS
UNITED STATES MAGISTRATE JUDGE

</div>

**Affidavit of Special Agent Kenneth Bain**                                                       **Page 6**